IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA          )
                                  )
              v.                  )   Case No. 1:22-CR-184
                                  )
FELIKS MEDVEDEV                   )
_____  )

### APPEAL FROM ORDER OF DETENTION

COMES NOW, Defendant FELIKS MEDVEDEV, by and through undersigned counsel, and hereby files this Appeal from an Order of Detention issued by the United States Magistrate Judge. Pursuant to 18 U.S.C. §3145(b), Defendant, a 42-year-old small business owner and father of two whose wife is battling cancer and who has never previously been accused of any crime asks that this Court conduct a hearing at which Defendant can demonstrate that he should be released on bail pending the trial of this non-violent matter.

Mr. Medvedev will first outline the charges. Next, Defendant will explain what happened before and after his arrest. Defendant will review his personal background, and the proceedings before the Magistrate Judge. Finally, Mr. Medvedev will summarize arguments he anticipates presenting at a hearing before this Court, and the reasons why this Court should reverse the decision by the Magistrate Judge.

## THE INDICTMENT

The Grand Jury issued two 40-count indictments in this case, each virtually identical to the other. (Doc. 1, Doc. 60).   Each indictment alleges that Feliks Medvedev committed a Georgia felony, which the Government then spun into a dizzying array of federal money laundering allegations. That supposed underlying Georgia crime is the seldom-prosecuted felony of operating a money transmitting business without obtaining the requisite license, found at O.C.G.A. §7-1-680, Section 1690. The license for this costs $2,150.

The guts of the allegations against Mr. Medvedev are found in paragraphs 2-10 from Count One.   These paragraphs note the nationwide requirements for money transmitting businesses. Paragraph 6 explains that Mr. Medvedev also registered eight companies with the Georgia Secretary of State in 2019-2020.   He opened bank accounts for those entities.   He was the sole signatory.   During this two-year period, approximately $150 million was transferred into and then out of these accounts.   The indictment also alleges that of this amount Mr. Medvedev "retained over $500,000." (As will be developed at the hearing on this Appeal, this is simply untrue).

The indictment never alleges that the money moved through these accounts was created by a crime of was otherwise illegal,

beyond the fact that Mr. Medvedev apparently does not have a Georgia money transferring business license. Even if some of the funds came from illegal activity there is no claim that Mr. Medvedev knew this.

Based on these allegations, the Grand jury charged Mr. Medvedev with 40 federal crimes. Count One alleges that he committed a federal banking violation, specifically, conducting an unlicensed money transmitting business. Count Two uses the same factual predicate to allege a Money Laundering Conspiracy. Counts 3-21 contend that Mr. Medvedev engaged in the international money laundering of monetary instruments by virtue of the 18 separate wire transfers described in those counts. Counts 22-40 allege that Mr. Medvedev engaged in the ubiquitous federal crime of engaging in monetary transactions in property derived from specified unlawful activity. As already noted, each and every crime alleged is built on the notion that Feliks Medvedev did not apply for and then pay the fees required to obtain a money transmitting business. Such a license costs $2,150 plus the completion of some paperwork.

https://mortgage.nationwidelicensingsystem.org/slr/PublishedStateDocuments/GA-Money-Transmitter-Company-New-App-Checklist.pdf

**ACTIVITIES BEFORE APRIL 28, 2023**

The indictments allege activities from August 2019 through February 2022 (which as we all know was the start of the Russian invasion of Ukraine).  The initial indictment was filed under seal on May 17, 2022 (Doc. 1).  The Government filed its required Defendant Information Sheet the same day.  While that document is under seal, Defendant contends that the United States already knew then (as it knew for many months beforehand), the key facts of Feliks Medvedev's life that will be described further below.

The Indictments were both designated as "highly sensitive." Despite this heightened security, the Government did not go to visit Mr. Medvedev and his family in May, 2022.  They also did not seek to arrest or question him in June of that year, nor in July, August, September or October.  The bottom line is that the Government knew virtually everything about Feliks Medvedev and his life well but waited until April 28, 2023 to arrest him.  The United States knew that Mr. Medvedev and his wife have 2 children, 12 and 9.  They knew the family rented their home.  They knew that Mr. and Mrs. Medvedev operate a music school in Forsyth County, Georgia.  They knew the family drive mid-price automobiles.  And, most importantly, agents of the United States Government were well aware that there has never been a single allegation of violence or weapons ownership by Mr. Medvedev or any member of his family.

4

Despite that the indictments allege purely non-violent crimes, Government authorities decided to arrest Feliks Medvedev at his home in the early morning hours of April 28, 2023. Raid jackets and weapons (the usual show of force) accompanied the throng of federal officers who threw the family on the ground and terrorized the children with memories they will never lose. When the smoke cleared, Feliks Medvedev sat for hours answering questions from the agents. At that time, the agents also learned why Mrs. Medvedev looked especially fragile: she has been battling breast cancer (double mastectomy, a recent bone cancer diagnosis, current and ongoing chemotherapy and radiation treatments).

Agents also executed search warrants throughout the Medvedev family residence. They seized Defendant's computer and phone, along with the electronics used by either Mrs. Medvedev or their children. Furthermore, agents took custody of Mr. Medvedev's passports.

As is usual the United States Pretrial Services office conducted an interview with Mr. Medvedev. From both that interview and in subsequent proceedings it became clear that Mr. Medvedev and his family are all from that part of Ukraine which has transferred back and forth between control of the Ukrainian and Russian governments. The family are all from Sevastopol, that part of the Crimean peninsula invaded by the Russian army back in

2014. Just today shortly before the filing of this Appeal Ukraine began a long-planned counteroffensive with the goal of slicing off the Crimean Peninsula from the rest of Russian-occupied Ukraine.

The pretrial report and subsequent proceedings demonstrated that Mr. Medvedev and his family emigrated to the United States more than 10 years ago.  Mrs. Medvedev and their older child subsequently became naturalized U.S. citizens.  The younger child was born here. The family and their legal advisors remained puzzled as to why the citizenship application of Feliks Medvedev remained in limbo for so long.  It now appears that the Government slow walked that proceeding while investigating the current case. As a result, by the day when the raid of his family's home took place, Feliks Medvedev was not a U.S. Citizen.  Instead, as with everyone born into that troubled part of the globe, Feliks Medvedev is a citizen of Russia, a citizen of Ukraine.  He remains a lawful permanent resident in the United States.

The Government moved to detain Mr. Medvedev without bail. Defendant retained undersigned counsel and a Detention Hearing was conducted in front of Magistrate Judge Vineyard on May 3, 2023. As described below, the Magistrate Judge entered an order of detention.

## PROCEEDINGS BEFORE THE MAGISTRATE JUDGE

The Government moved to detain Mr. Medvedev without bail, pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§3141-3156. (Doc. 15). The prosecution contended that there was a serious risk that Mr. Medvedev would not appear for further court proceedings.

The Government made a proffer to the Magistrate Judge focusing on three areas. First, the United States pointed out that Mr. Medvedev was not a U.S. Citizen and was a person who could obtain either a Ukrainian or Russian passport. Second, the Government focused on the amount of money that went through the accounts Defendant had opened in a two-year period. Finally, the prosecution presented documents showing that Mr. Medvedev had applied for entry into the U.S. for some of his relatives, and that in those applications he contended he owned significant assets, including overseas gold deposits. As part of this third prong of its presentation, the Government presented to the defense for the first time in court several documents seized pursuant to the search warrants.

In response Mr. Medvedev through counsel explained that the application for his relatives was done out of desperation to try and get them out of a war zone. The defense conceded that the documents contained false information, namely, the claim that Mr.

7

Medvedev had significant assets and gold deposits. Defense counsel explained that the "gold documents" found by the agents were mostly created on Mr. Medvedev's computer and were an attempt to make him appear to be a better candidate for sponsoring his relatives who remained in Crimea.

Mr. Medvedev also pointed out the unique aspect of his personal situation. Mrs. Medvedev is often bed-ridden from her cancer treatments. Defendant is essentially the sole parent in the house capable of caring and providing for the minor children.

Defendant also pointed to his financial circumstances. He and his wife operate a music business. Defendant also operates a business called "Car Cash Title" which specializes in funding used car loans for small dealerships. Mrs. Medvedev mostly operates the music business while Defendant operates the car loan business along with two friends from back in Crimea (who fund the loans).

At the detention hearing Defendant suggested that the Court had multiple options beyond detention to assure his appearance at future proceedings. First, Mr. Medvedev offered to pledge the only real estate owned by the family, a piece of raw land in a growing part of north Atlanta valued at several hundred thousand dollars. Mr. and Mrs. Medvedev own this piece of property outright and there is no mortgage. Second, Defendant offered to submit to any reasonable electronic monitoring suggested by the Government.

Third, he offered to surrender the U.S. passports of his wife and children.

The Magistrate Judge granted the prosecution's request for detention without bail. (Doc. 21). The Magistrate concluded that there was clear and convincing evidence that no condition or combination of conditions of release would reasonably assure Mr. Medvedev's appearance at future court proceedings. The Magistrate Judge checked three boxes on the standard form used for rulings in such matters. First, the Magistrate Judge checked the box indicating that the weight of the evidence against Mr. Medvedev was "strong". Next, the Court checked the box indicating that Defendant is subject to a lengthy period of incarceration if convicted. Finally, the Magistrate Judge checked the box that noted Mr. Medvedev has significant family or other ties outside the United States.

The Magistrate Judge also entered a written statement in support of the Order of Detention. The Order noted that money which moved through the accounts came from or went to other companies that had "ties to Russia." Next, the Magistrate Judge noted Defendant's dual citizenship and possession of passports from Ukraine and Russia. Third, the Magistrate Judge pointed to the document in which Mr. Medvedev falsely claimed to own over $5 million in gold when trying to get family out of the Ukrainian war

zone. The Magistrate looked to the documents found on his computer supposedly showing an order for $650,000 in gold reserves.  Noting the defense position that the claimed gold assets were part of a desperate effort to save family members, the Magistrate Judge held this effort showed Defendant's willingness to take "extreme steps and violate the law."  Finally, the Magistrate Judge held that Defendant's supposed access to large sums of money entrusted to him by others and his supposed skills at moving and laundering funds presented a significant flight risk.

### DEVELOPMENTS AFTER THE DETENTION HEARING

As noted above, on the day he was arrested Mr. Medvedev willingly answered agents' questions.  Through counsel he offered to continue his cooperation.  His effort to assist by engaging in undercover cooperation was doomed when the media office of the U.S. Attorney issued a press release trumpeting the charges against and arrest of Mr. Medvedev.

Still willing to cooperate, Defendant was debriefed on two occasions after the detention hearing.  Furthermore, through his attorney Mr. Medvedev has provided other information about which he is aware relating to the charges in this case.  Finally, Mr. Medvedev also provided factual information and observations to a separate group of federal prosecutors and agents who are looking

10

into matters at the detention facility where Defendant is being housed while being detained.

## THE COURT SHOULD CONDUCT A DE NOVO HEARING

Pursuant to 18 U.S.C. §3145(b) a Defendant can file a motion seeking revocation of an order of detention.  The statute notes that such a motion "shall be determined promptly." In such an appeal, the District Court must conduct a de novo review, and must review all of the facts presented to the Magistrate Judge.  United States v. Gaviria, 828 F. 2d 667 (11th Cir. 1987); United States v. King, 849 F. 2d 485 (11th Cir. 1988).

Defendant asks that the Court conduct a hearing regarding this Motion.  Mr. Medvedev suggests that the Court should consider four areas during such a hearing.  First the Court should decide whether the Magistrate improperly assessed the "weight of the evidence." Second, the Court should look at the issues surrounding the claims about significant assets and gold ownership. Third, the Court should address Mr. Medvedev's family circumstances and ties. Finally, Mr. Medvedev asks that the Court focus on the many alternatives to detention rejected by the Magistrate Judge.

## The Supposed Weight of the Evidence

Undersigned counsel recognizes that detention hearings are not designed as miniature trials. When an indictment has been issued, that means a Grand Jury already found probable cause.  The

11

focus generally is on the Defendant, any prior criminal record, his or her family situation, and methods for assuring the Defendant's appearance in court and methods for assuring that the community is safe.

Here, the Magistrate Judge found that the weight of the evidence against Mr. Medvedev is "strong." With all due respect, that assessment was incorrect. It bears repeating: each and every crime in the indictment depends on whether Feliks Medvedev violated the Georgia statute that requires a $2,150 money transmitting license. There likely will be little dispute at a trial about the base-line facts: who opened which account and engaged in which transaction. Instead, the bigger question will be whether Feliks Medvedev acted with the requisite *mens rea* necessary to commit the underlying Georgia felony. It is simply incorrect to hold at this phase of the proceedings that the evidence is "strong" against Mr. Medvedev.

### Defendant's Assets

The Government presented information showing that on October 31, 2022 Mr. Medvedev filed documents seeking to bring relatives into the U.S. from Ukraine. Mr. Medvedev claimed he was an appropriate sponsor in that he owned over $8 million in assets, $5 million of which was in gold deposits.

12

As noted before, the United States presented documents found during the search warrant that supposedly demonstrated Mr. Medvedev's purchase and ownership of gold bullion from an exchange in Singapore. As will be set out at the hearing, these documents do not show what the prosecution contends. Instead, the documents were created to bolster Defendant's claims of assets which would then support his effort to get family members out of the Ukraine-Russian war. The documents themselves show that Defendant never paid for, took ownership of, or possessed any gold.

### Community and Family Ties

The Magistrate Judge's order also focused on Mr. Medvedev's obvious ties to Russia and Ukraine. These ties are undeniable. However, the Magistrate overlooked and never mentioned the overwhelming and strong ties that Mr. Medvedev has to the Northern District of Georgia. He lives here and owns businesses and a piece of property in this District. His children attend local schools. His wife battles cancer on a daily basis and has resumed her debilitating treatments in an effort to remain alive. His passports have been seized. So, while the Magistrate Judge was correct that Defendant has significant ties overseas, such a finding completely ignores the far stronger ties to this District.

13

**Alternatives to Detention**

The Magistrate Judge held that there are no set of conditions that can reasonably assure Mr. Medvedev will appear in Court when ordered to do so.   Defendant respectfully suggests that the Magistrate Judge erred.

When Congress created the Bail Reform Act in 1984, the legislation placed the burden on the Government to prove by clear and convincing evidence that detention is needed in a particular case.   The Order of Detention here appears to switch that burden of persuasion.   That Order fails to explain how the Government proved by clear and convincing evidence that there are no conditions to assure that a 41-year-old family man with a very sick wife and two minor children will not appear in Court if his passports have been seized and he surrenders the passports of his family members.

The Order of Detention also erred factually in holding that there are no set of conditions that can assure Defendant will appear in Court. Conditions of pretrial release have changed significantly since the day in 1984 when the Bail Reform Act went into effect.   Now, Pretrial Officers have the ability to monitor Defendant's movements with GPS-connected ankle monitors. Courts regularly impose pretrial restrictions that prohibit certain activities on electronic devices, including bans on accessing the

14

internet.  Other courts require that the Defendant install tracking software on computers and agree to unannounced searches of their residence, workplaces and automobiles to enact reasonable internet restrictions. The Magistrate Judge failed to explain why these obvious conditions were insufficient.

## CONCLUSION

Based on the foregoing, Defendant asks that the Court conduct a hearing regarding this Motion.  At the conclusion of that hearing, Defendant asks that the Court revoke the Order of Detention and release him with reasonable restrictions imposed.

Dated: This 9th day of June 2023.

Respectfully submitted,

*/s/ Paul S. Kish*
PAUL S. KISH
Georgia State Bar No. 424277
Attorney for FELIKS MEDVEDEV

Kish Law LLC
229 Peachtree Street, NE
Suite 2505
Atlanta, Georgia 30303
404-207-1338
paul@kishlawllc.com

15

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foreging filing into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 9th day of June 2023.

<u>/s/ Paul S. Kish</u><br>
PAUL S. KISH<br>
Georgia State Bar No. 424277<br>
Attorney for FELIKS MEDVEDEV

Kish Law LLC
229 Peachtree Street, NE
Suite 2505
Atlanta, Georgia 30303
404-207-1338
paul@kishlawllc.com